BELL v. BELL.

1. A debtor, owing two debts to the same creditor, has the right, on making a payment, to direct its application; if the debtor has given no directions, the creditor may make the application at his pleasure. The doctrine considered and the reported cases cited.

2. A creditor had an account against his debtor, for part of which he also held his debtor's note, and he credited generally upon the account payments which were made by the debtor without direction for their application, and the creditor indorsed no credits on the note. *Held*, that the creditor had the right to apply the payments to so much of the account as was not secured by the note, and that they had been so applied, and that the note remained unpaid.

3. Findings of fact by master and Circuit judge affirmed.

4. An account more than six years old is barred by the statute of limitations.

---

Before WALLACE, J., Kershaw, February, 1882.

This was an action by W. T. Bell and M. A. Gordon, grand-children of Willis B. Huckabee, against Annie E. Bell and others, grandchildren, and J. J. Huckabee and others, children, of W. B. Huckabee, and against Witte Brothers. The facts connected with the claim of Witte Brothers are stated in the opinion of this court. Omitting this statement from the master's report, it was otherwise as follows:

The master respectfully reports that, in obedience to the order of reference in this case, evidence and testimony have been taken and herewith submitted. There seem to be three leading questions in the case, each of which will be stated, and conclusions of fact and law set forth.

I. The claims of Joseph J. Huckabee against the estate of his father, Willis B. Huckabee, to be paid his share of the crops made by them, working together on the farm, and also for one-third of the Nelson tract of land—370 acres. Joseph J. Huckabee testified that he worked with his father on this land from 1852 to 1872, except four years when he was in the army. His services were for overseeing and managing the farm, plowing, doing wood and blacksmith work; that his services were worth $300 per annum, and he had four hands (slaves) in the crop up to 1865; that his father was old and infirm, and unable to manage the farm. Proof is by other witnesses to same effect, that Joseph J. Huckabee did execute this work as stated above; and further, that during the war, Joseph J. Huckabee, his wife, his four children and eighteen slaves, W. G. Huckabee, wife, three children and two slaves, A. A. Huckabee, wife and three children, all lived on the farm with their father, his wife and daughter; and all these families were supported by the produce of the farm, which was chiefly provisions and little cotton, and the products were chiefly used in supporting the family and farm, and in paying taxes and tithes; that the father, Willis B. Huckabee, died April 3d, 1875, and J. J. Huckabee has never rendered any demand to his executor for any debt due to him by his father; that he confessed a judgment to his father on February 24th, 1874, for $2,905, for a note dated August 13th, 1873, due at one day, given by him and W. G. Huckabee, for a store account, as they both testified to. To this claim plaintiffs

plead statute of limitations, not having made any demand for it within four years after the death of testator, on April 3d, 1875, until he filed his answer in this case, March 26th, 1881.

*Conclusion of Law.*—The whole claim is stale and barred by statute of limitations; he never demanded it from W. B. Huckabee in his life-time, but, on the contrary, confessed a judgment to him for a debt due; never demanded same from his brother, the executor of his father; therefore the claim must be rejected.

The demand for one-third of the Nelson tract of land is equally untenable. Whatever contract was made by J. J. Huckabee with his father about the land was merely parol; never demanded to be executed in his life-time, or since his death, by the executor. The testimony on the subject is that of Joseph J. H., who says that he told his father to bid off the land at the sale by the commissioner in equity, and he would help to pay for it by the labor of himself and slaves, on condition that his father would give him his proper share of the land for such work, when the land was paid for. He does not say his father agreed to this proposition, but his father did buy the land, and he paid his proportion of the cost by the labor of himself and slaves. W. G. Huckabee testified that he heard his father say that J. J. Huckabee told him if he would buy the land, he (Joseph J. Huckabee) would come home and work the land and help to pay for it; that his father told him he would do what was right by his son Joseph; that Joseph J. Huckabee did move upon the land and made crops upon it by himself and his slaves, together with his father's slaves, and they, together, did pay for the land; that the labor performed by J. J. Huckabee was that of plowman, manager, blacksmith and carpenter, all of which he performed well and skillfully. All this work was done prior to 1872, when he left the farm and moved off, and two years thereafter he confessed a judgment to his father for $2,905, on a note dated August 13th, 1873, and swore that he owed the note. From this testimony the conclusion of law is reached, that the claim is untenable and barred by the statute of limitations, and should be rejected.

II. A judgment was confessed for $3,006.68 by Joseph J. and W. G. Huckabee to their father, Willis B. Huckabee, before

the clerk of the court, on February 24th, 1874, founded on a note dated August 13th, 1873, with interest up to the date of confession, and execution thereon issued; that according to the requisition of law, the two parties confessing the judgment made oath before the clerk of the court on the same day, that the facts set forth in the confession and judgment were true.

Defendants (Witte Bros.) allege in the third section of their answer, that they have no knowledge of this judgment, and pray it may be proved; and they offered testimony to show that there was no consideration for the note on which the judgment was founded, and it was received under protest of plaintiffs. The testimony offered is that of J. J. Huckabee, who testifies that the consideration of the note for $2,905, on which the confession was founded, was a store account due by him and his brother, W. G. Huckabee, to their father; that the reason of confessing the judgment was to prevent creditors, to whom he was bound as surety for others, coming down upon him and breaking him up, as he was threatened to be sued for such surety debts. Willis G. Huckabee testified that the consideration of the note was the store account that he and his brother owed to their father. This is the whole testimony on the subject. I find, therefore, as matter of fact, that there was a valuable and just consideration for the note on which the confession of judgment was founded, and, therefore, as matter of law, that same is valid, subsisting and unpaid.

III. Claims of Witte Brothers. I find the facts as follows:
*   *   *

From these facts I draw the conclusion of law that the note of $2,000 to Witte Bros., by J. J., W. G. and A. A. Huckabee, dated January 20th, 1874, must be regarded as paid—

1. Because J. J. Huckabee made payments to Witte Bros. from the crops of 1874 of larger amounts than $2,000 and interest, and $1,200 agreed to be advanced, and the signers of said note being recognized as sureties only by Witte Bros., had the equity to require such payments to be applied to the payment of those amounts.

2. Because, when Witte Bros. advanced to J. J. Huckabee beyond the $1,200, they gave no notice to the signers of the note

that they were doing so, so that the said signers might protect themselves; that when they advanced beyond the $1,200, the said signers of the said note were not bound by it.

3. Because this note was due on December 1st, 1874, and by the taking of new securities and extending the time for payments of said debt for which the note was collateral, Witte Bros. have released the securities.

4. Because the advances made by Witte Bros. to J. J. Huckabee beyond the $1,200 provided for by the mortgage, were made subsequent to the date of the confession of judgment by J. J. Huckabee, and must be postponed to that judgment under the authority of *Ror. Jud. Sale*, § 824.

5. Because, by the authority of *Story Eq. Jur.*, § 459, payments made by the debtor must be applied to the payment of the oldest debt; and here the note given being older than the advances, must be considered paid.

6. Because, when there are equities between the parties, the Court of Equity will not follow the strict rule of law that a creditor without instructions may apply payments to any debts due to him, but will take cognizance and decree in favor of the equity. Here the equity is that the signers of the note were sureties, without notice of the advances made beyond the $1,200. See *Hammersly* v. *Knowlys*, 2 *Esp. N. P.* 666, quoted by Chancellor Harper in *Heilbron* v. *Bissell, Bailey Eq.* 435.

7. Because, in no sense can the note of Joseph J., W. G. and A. A. Huckabee to Witte Bros. for $2,000, dated January 20th, 1874, be considered a continuing guarantee of the final balance due by J. J. Huckabee to Witte Bros., but must be confined to the year 1874.

IV. I find, therefore, that from the proceeds of the sale of the lands of Joseph J. Huckabee, 1,150 acres mortgaged to Witte Bros., the said judgment confessed to Willis B. Huckabee shall be first paid, and the balance be applied to pay on said mortgage debt, and recommend the same to be sold as prayed for by said Witte Bros.

V. I recommend that the following real estate belonging to the estate of Willis B. Huckabee, deceased, be sold   *   *   *

J. M. DESAUSSURE,
*Master Kershaw Co.*

To this report numerous exceptions were taken by all parties, upon which was passed the following decree:

This action is brought by certain legatees under the will of Willis B. Huckabee against the executor and others for the settlement of the estate of the testator. The whole case has been heard by the master for Kershaw county, and a report made as to the law and facts. The exceptions to the report are numerous, and taken by both sides. According to the view I take of the case, it will not be necessary to consider all of the exceptions in detail. The questions involved are not dependent one on the other, and the order in which they are considered is, therefore, not material.

The first question considered by the master relates to "the claim of Joseph J. Huckabee to be paid his share of the crops, made by them working together on the farm, and also for one-third of the Nelson tract of land." The findings of law and fact by the master in relation to this claim are approved by this court. The findings of the master in relation to the claim of J. J. Huckabee for one-third of the Nelson tract of land are approved and confirmed by this court.

In relation to the judgment confessed by J. J. Huckabee and W. G. Huckabee to Willis B. Huckabee on February 24th, 1874, the finding of fact by the master is approved and confirmed. To these facts I will add the remark, that there is nothing to show that Willis B. Huckabee, the plaintiff in the judgment, had any knowledge that the design of J. J. Huckabee or W. G. Huckabee in confessing the judgment was to hinder, defeat or delay their other creditors. The finding of law by the master in regard to this confession of judgment is approved and confirmed.

The allegation of the complaint, that A. A. Huckabee had purchased lands of the testator's estate at an undervalue, is not passed upon by the master or pressed before me. I assume, therefore, that cause of action is abandoned.

The remaining question relates to the mortgage executed by J. J. Huckabee on January 24th, 1874, to secure a note executed on January 20th, 1874, for $2,000, to Witte Bros. Witte Bros.

make no objection to the litigation of their claims in this action, but join in so much of the prayer of the complaint as asks the sale of the land described in their mortgage. The findings of fact by the master in relation to the transactions between Witte Bros. and J. J., W. G. and W. B. Huckabee, are approved and confirmed. There may be some inaccuracy in the figures of the master, but this can be corrected upon a future reference, the design being to settle, as far as this court can, the principles upon which the rights of parties depend, and upon which the accounts may be subsequently made up.

Now, upon the facts, is the mortgage of January, 1874, satisfied? In January, 1874, J. J. Huckabee was indebted to Witte Bros. for the amount of balance unpaid of his account of 1873; for this balance, J. J. Huckabee executed his sealed note to Witte Bros. with W. B. and A. A. Huckabee as sureties; to further secure the note, and to secure advances for the year 1874, he executed the mortgage; the advances thus secured were not to exceed $1,200. Accordingly, advances were made in 1874 and exceeded $1,200 in amount. The amount of the balance of the account of 1873, including the $2,000 for which the note had been given, was brought forward and stood the first entry in the account for 1874. In November, 1874, J. J. Huckabee began to forward cotton to Witte Bros., and continued to do so, from time to time, up to February 26th, 1875. The sums for which these lots of cotton were sold were credited upon the account of J. J. Huckabee, but not upon the note.

In 1875 a new contract was entered into by Witte Bros. and J. J. Huckabee, in which another mortgage of the same land was executed by J. J. Huckabee to Witte Bros. This mortgage, among other things, contains a stipulation that this land is again mortgaged to secure the same $2,000. There is no evidence to show that the note of $2,000 was given and accepted in payment of the balance of 1873 *pro tanto*. Yet, notwithstanding the sum of that balance stood at the head of the account of 1874, $2,000 of that sum was represented by the note secured by sureties and a mortgage. That balance, as it stood at the head of the account, was unsecured, while the following items of the account, to the

amount of $1,200, were secured by the same mortgage that secured the $2,000.

These facts sufficiently differentiated the note to enable the parties to agree as to the application of the payments. And the agreement of January 15th, 1875, shows that J. J. Huckabee and Witte Bros. had agreed that the payments should not be considered as applied to the $2,000. It is therefore adjudged, that the note of $2,000 is not paid, and that the mortgage of January 24th, 1874, is unsatisfied.

There is no explanation as to any further agreement as to the application of the payments to the account for advances for the year 1874; it must be, therefore, adjudged, that the payments must be applied, beginning at the first item for supplies, and continued regularly in succession until the payments are exhausted. It is further adjudged, that the supplies, payment for which was secured by the mortgage of January, 1874, were the supplies, to that amount, first delivered and charged to J. J. Huckabee, and that the supplies, payment for which was secured by the said mortgage, are paid for.

It is clear that the balance due Witte Bros. on the account of 1875, is not secured by the mortgage of January, 1874. That mortgage was security for another and independent debt, and there is nothing to show that it was ever intended to cover any other debt than the one described on its face. On the contrary, for the debt of 1875, there was, in addition to other securities, a new mortgage of the same lands.

It is therefore ordered and adjudged, that the land described in the mortgage of J. J. Huckabee to Witte Bros. be sold by the master for Kershaw county, the time and terms of said sale to be fixed by a subsequent order of this court, and that the proceeds of said sale be first applied to the amount of the note and interest the mortgage was given to secure, and, after the satisfaction of the said note and interest, to the judgments against J. J. Huckabee and others in favor of Willis B. Huckabee, and any balance to the mortgage of Witte Bros., of January, 1875. * * *

From this decree the plaintiffs and A. A. Huckabee appealed,

and also the defendant, J. J. Huckabee, upon the exceptions stated in the opinion.

*Messrs. Chesnut & Workman,* for plaintiffs and A. A. Huckabee.

*Messrs. Leitner & Dunlap* for J. J. Huckabee and Witte Bros., and for the latter, also, *Messrs. Buist & Buist.*

September 26th, 1883. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. This action was brought for the settlement of the estate of Willis B. Huckabee, deceased, who died in March, 1865, bequeathing his estate to plaintiffs, and several of the defendants, his children ; the defendant A. A. Huckabee, one of them, being appointed executor. The will directed that each of the legatees should account to the estate for whatever amounts they might be indebted thereto, without interest.

It appeared that some time before the death of the testator, to wit, in August, 1873, the defendant J. J. Huckabee executed a note to his father, with W. C. Huckabee, his brother, as surety, for $2,905 ; that in February, 1874, these parties confessed a judgment to W. B. Huckabee on this note, amounting at that time to $3,006.68. It further appeared that, on account of certain dealings between J. J. Huckabee and the defendants Witte Bros., of Charleston, the said J. J. Huckabee, on or before January 22d, 1874, had become indebted to the said Witte Bros. in the sum of $2,000, for which Huckabee gave his note at said date, with W. B. Huckabee, the testator, and A. A. Huckabee, as his sureties, with interest at the rate of fourteen per cent. per annum, and payable on or before December 1st, 1874. At the same time, as further security to this note, and for supplies to be advanced to him to an amount not exceeding $1,200, with interest at fourteen per cent., he executed a mortgage to Witte Bros. of a tract of land containing 1,150 acres, situated on the waters of Wateree river in Kershaw county.

This mortgage bore date prior to the confession of judgment of J. J. Huckabee and W. G. Huckabee to their father, the

testator.   The plaintiffs, however, claimed that the debt had been
satisfied by produce consigned by Huckabee to Witte Bros., and
one object of the complaint was to have it so declared in order
that the land of J. J. Huckabee covered by this mortgage might
be sold to pay the judgment confessed to the testator free from
the cloud of the mortgage ; and to this end Witte Bros. were
made parties to the action, who answered, denying that their
mortgage had been satisfied, and alleging that the confession of
judgment was without consideration, and, therefore, void.   J. J.
Huckabee and W. G. Huckabee also set up the defense that the
confession was without consideration ; and J. J. Huckabee further
claimed that his father was largely indebted to him for services
as manager of his father's business from 1851 to 1862—nine
years and seven months, and again from 1865 to 1872, six
years and eight months—and for other services as blacksmith at
the rate of $300 per annum ; and further, for one-third interest
in a tract of land, known as the Jack Nelson land, which he
alleged had been purchased by his father with the understanding
that he was to have one-third interest therein.

The case was referred to the master, who, after full testimony,
reported that the judgment by confession was founded upon a
sufficient consideration, to wit, a store account, and was a valid
judgment ; that the Witte Bros.' mortgage had been satisfied by
sales of produce shipped by J. J. Huckabee, and that the claim
of J. J. Huckabee against the estate of his father was stale and
barred by the statute of limitations ; and he recommended that
out of the proceeds of the sale of the 1,150 acres of land mort-
gaged to Witte Bros. the judgment confessed to the testator,
W. B. Huckabee, be first paid, and the balance, if any, be
applied to a second mortgage of Witte Bros., executed in 1875,
and junior to the judgment confessed.

Upon exceptions to this report, Judge Wallace sustained it,
except as to the satisfaction of the Witte Bros.' mortgage ; as to
this, he held that the note of $2,000, secured by said mortgage,
had not been paid, and he ordered the land sold, the proceeds
thereof to be applied first to the amount and interest of said
note, and, after the satisfaction therof, then to the judgment
against J. J. Huckabee and W. G. Huckabee, and any balance to

the second mortgage of Witte Bros. From this decree the plaintiffs and the defendant J. J. Huckabee have appealed; the plaintiffs upon the ground that his Honor should have held, upon the facts and law of the case, that the $2,000 note secured by mortgage to Witte Bros. had been paid; and the defendant, upon the grounds: 1. Because his Honor erred in sustaining the report of the master, wherein he held that defendant's whole claim for services was barred by the statute of limitations; 2. Because his Honor erred in sustaining the report of the master, wherein he holds that the demand for one-third of the Jack Nelson land, set up by J. J. Huckabee, was untenable; 3. Because his Honor erred in sustaining the master's report, that the confession of judgment was a valid and subsisting debt.

We will take up the plaintiffs' exceptions first. To a proper understanding of the question raised in this exception, it will be necessary to go a little deeper into the facts connected with the business transactions of J. J. Huckabee and Witte Bros. It seems that Huckabee was a planter in Kershaw county, and that he obtained his supplies, &c., necessary to the running of his farm, from Witte Bros, merchants, in Charleston, to whom he shipped his cotton and other produce; that at the end of the year 1873, the balance against Huckabee, in favor of Witte Bros., was something over $2,000, for which Huckabee gave his note (the note in question). The account of 1873, on the books of Witte Bros., was left standing, no entry of the note as a credit being made; the balance of 1873, including the $2,000, being carried forward and left standing as the first entry on the account of 1874.

At the time the note was taken, as has already been stated, Witte Bros. agreed to advance, for the year 1874, an amount not to exceed $1,200. And with the view to secure this note and the advances agreed upon, Huckabee then executed the first mortgage, to wit, in January, 1874. During that year Witte Bros. furnished supplies considerably over the amount agreed upon, to wit, $3,229.80, instead of $1,200. In November, Huckabee began to send forward cotton to Witte Bros., which he continued to do until January, 1875. The proceeds of this cotton were

credited upon the account of Huckabee, no part being paid to the note.

In January, 1875, Witte Bros. agreed to make advances for that year to an amount not to exceed $3,000, with interest at fourteen per cent., to be paid in December, 1875 ; and Huckabee agreed to send forward his crop of cotton for that year, the proceeds to be applied to pay expenses of papers, the advances and interest, "and then to the payment of any amounts that may now be due" to them ; and should any balance remain, to be placed to the credit of Huckabee. That agreement was in writing, and contains a lien on the crop and a mortgage on the 1,150 acres before mentioned, to secure the $3,000 and interest, and also the sum of $2,000 now due for past advances. At the end of the cotton season for 1875, upon a balance being struck, March 28th, 1876, Huckabee was indebted $3,746.10, which included the $2,000 note.

The parties had little or no dealings in 1876. Their relations, however, were renewed in 1877, when further advances were made during that year. No balance was struck in 1877–8 or 9, but on January 26th, 1880, a balance is struck of $223.69 in favor of Huckabee, which balance, it is admitted, should be credited on the balance against him in 1875, to wit, the $3,446.10. This amount, to wit, $3,446.10 — $223.19, is the amount claimed by Witte Bros. in the account up to March 28th, 1875, including the $2,000 note and interest. It is not contended that the first mortgage secures any portion of this balance except the $2,000 note and interest, and the sole question is, whether, under the facts as above, that note should be regarded as paid.

The solution of this question depends upon the principles applicable to the application of payments. This doctrine has been much discussed both in England and also in the American States ; and because of the contrariety in the decisions much confusion has resulted. This has given rise to a separate work on the subject by Mr. George H. Munger, where numerous cases are collected and discussed. At one time and in many cases in England, the civil law, which seemed to regard the interests of the debtor as most to be protected, was followed ; at another and

in other cases, the creditor was the favorite. Finally, as Mr. Munger concludes, the rule adopted in Great Britain and most of the States of this country, is as follows (*Munger, ch. III., p.* 10) : 1. Where money is paid by a debtor to his creditor, the debtor has a right to make the appropriation to which account he pleases. 2. If the debtor make no appropriation, then the creditor may apply it at his own pleasure to the satisfaction of any demand which he has against his debtor. 3. If neither party make any such application, then if there be various debts due the creditor, the court will make the application according to its own view of the law and equity of the case under all the circumstances.

In our State this doctrine has also been much discussed and a conclusion reached somewhat in unison with the above principles, but rather more distinctly defined and limited. The most important of the cases in our reports are the following : *Smith* ads. *Screven,* 1 *McCord* 368 ; *Black* v. *Shooler,* 2 *McCord* 294 ; *Schnell* v. *Schroder, Bailey Eq.* 342 ; *Heilbron* v. *Bissell and Warner, Bailey Eq.* 430 ; *McDonald* v. *Pickett,* 2 *Bailey* 618 ; *Carson* v. *Hill and Jones,* 1 *McMull.* \*83 ; *Jones* v. *Kilgore,* 2 *Rich. Eq.* 66 ; *Brice* v. *Hamilton,* 12 *S. C.* 37. In the first three cases the proposition first above stated is distinctly announced, to wit : that a debtor when he makes a payment has the right to direct and control the application. This seems to be the well-settled doctrine everywhere. The second proposition, as a general rule, is also well settled, to wit, that the creditor may make the application if the debtor has not done so. This was held in *Schnell* v. *Schroder, supra,* and in *Heilbron* v. *Bissell and Warner, supra.* It was further held, that the creditor in making the application was not limited as to the time within which he may do so, in accordance with *Stewart* v. *Cochran, Bailey Eq.* 380. And in *Brice* v. *Hamilton,* 12 *S. C., supra,* the last case upon this subject, this court held, that when the debtor directs no application at the time of payment the rule is that the creditor may make the application at any time before judgment or verdict; approving *Heilbron* v. *Bissell and Warner,* and limiting *Jones* v. *Kilgore.*

In *Heilbron* v. *Bissell and Warner,* Chancellor Harper goes

fully into a discussion of the whole subject, and after a thorough and most able examination of the prominent decisions, concludes in opposition to the leaning of the master of the rolls, as follows: " With the respect due to so great an authority, I have examined the cases referred to and some others on the same subject, and my conclusion is, on the preponderance of authority, that the creditor has the unlimited right to appropriate, when the debtor has made no appropriation at the time of payment." This, then, seems to be the law in our State, and such being the law, the third proposition above is not very important, as it will not be often that the creditor would fail to exercise his right. It was said, however, in *Jones* v. *Kilgore,* if neither party would fix the application, then it devolves on the court, and will be made *pro tanto* to the demands held by him who receives the money, or if one demand be less secured than the other the application would be made to it in the first instance, citing 5 *Mason* 82; 4 *J. J. Marsh.* 97; 9 *Cow.* 420.

Now, apply these principles to the facts of this case. The payments made by Huckabee to Witte Bros. in 1874, after the $2,000 debt had been contracted and the note therefor given, were made from the proceeds of the cotton shipped by Huckabee after November of that year. There is no evidence that Huckabee gave any directions as to the precise application when the consignments went forward. In the absence of this, Witte Bros. had the right to make the application which in their answer they say they did do, making the application to the advances of that year. This application was subsequently recognized as proper by Huckabee in the agreement made the next year, 1875, for advances of that year, as that agreement contains a lien on the crop and a mortgage on the 1,150 acres of land to secure said advances, and also the sum of $2,000, due for past advances with the interest thereon. Besides this, we think that the same result would follow from a careful examination of the original contract between the parties, and a proper construction thereof.

At the close of the year 1873, Huckabee was found indebted about $2,000; this was ascertained, and a note given for the amount, with delay of payment until December, 1874. This note was given by Huckabee, with his father and brother as

sureties. It is true the amount was carried forward at the head of the account for 1874. This was, no doubt, done early in the year, and before it was settled by note; the note was not given until January 20th, 1874, and standing at that time in the shape of an account, it was never changed; yet, the facts are that the debt was ascertained, and was closed up by note before the business of the next year commenced. The argument of the appellant is that, notwithstanding the arrangement made as above, yet the debt of 1873 and 1874 was all one debt, represented by a running account; and that, under the law, where payments are made in such a case, the payments should be applied to the first items; and many authorities are referred to sustaining this latter proposition. These are not denied. The general rule of law, no doubt, is as stated; but, in our judgment, the facts do not fit. We think there was a separation here of the two debts; one was ascertained and liquidated before the other was contracted; one was present and the other in the future, when the mortgage was given, and the doctrine of the application of payments to two or more debts applied, and sustains the ruling of Judge Wallace on this subject.

As to the claims of J. J. Huckabee against the estate of his father for services, &c., and also his claim for a portion of the Jack Nelson land, the findings of fact and law of the master have been approved by Judge Wallace. We see no reason to disturb either. There seems to be no foundation in the facts for either claim; and, certainly, as to the first, the statute of limitations would be a complete answer in any event.

As to the judgment confessed by the Huckabees, the master finds as matter of fact that it was based upon a store account. The Circuit judge sustains this finding; and further, he states that there is nothing to show that Willis B. Huckabee, the plaintiff in the judgment, had any knowledge that the design of J. J. Huckabee or W. G. Huckabee, in confessing the judgment, was to hinder, defeat or delay their other creditors. We cannot say that these findings have no support in the testimony.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.