## WARDLAW v. TROY OIL MILL.

1. MECHANIC's LIEN—PAYMENT.—Where a manufacturer of brick sells to a builder a quantity of brick which is used partly in the contemplated building and part sold without notice to manufacturer and payment is made on account generally and manufacturer files a mechanic's lien for balance, the lien is only valid for amount of brick used in the building, but, under the facts here, the payment on account may be credited by creditor on unsecured part of debt and not on oldest items.

2. NOTICE.—CHATTEL MORTGAGE not recorded in time is not a valid lien on property covered against a subsequent creditor before record, on ground that such creditor did not extend credit on the faith of property thereby covered. Knowledge by the president of the corporation of lien on machinery bought by it is not notice to bank loaning money to the corporation because such president is a director of the bank and a member of its loan committee.

3. MARSHALLING—EQUITY.—A CREDITOR holding a mortgage lien which it neglects to record in time has no equity to require a subsequent creditor to exhaust indorsers on its note so as to permit the mortgage creditor to have a large part of debtor's property applied to his mortgage debt.

4. IBID.—PRACTICE.—In a proceeding to marshall assets and call in creditors, after all parties have been heard; report made purporting to cover all claims; no exceptions filed; a creditor then making application to have his claim increased or amended should make some showing of excusable neglect, inadvertence or surprise, and all other parties in interest should be given an opportunity to be heard.

5. REHEARING refused.

6. NEW TRIAL.—Motion for leave to make motion below for new trial on after-discovered evidence refused, because it does not clearly appear that the after-discovered evidence would effect the result, and Court is not satisfied that movant has used due diligence.

Before WATTS, J., Greenwood, May, 1905. Modified.

John U. Wardlaw and W. H. Kennedy against Troy Oil Mill *et al.* From Circuit decree, Troy Oil Mill, G. P. Neel and J. C. Kennedy, receivers, and First National Bank of Greenwood, appeal.

*Messrs. Caldwell & Giles, Wm. P. Greene* and *McGhee & Richardson,* for appellants.

*Mr. Wm. P. Greene,* for First National Bank of Greenwood, cites: *Order as to opening cause and providing for attorneys' fee on claim of D. A. Tompkins Co. is wrong:* Code of Proc., 294, 290; 30 S. C., 329; 32 S. C., 58. *Could Georgia-Carolina Company elect as to which items of its account it would apply the payment on account:* 24 Minn., 86; 23 Me., 22; 36 Ala., 482; 1 Mer., 512; 2 B. & Ald., 39; 5 Bing., 13; 4 Russ., 154; 27 Ala., 445; 6 N. Y., 147; 105 Mass., 255; 22 Mich., 475; 44 Me., 121; 9 Wheat., 720; 19 Conn., 190; 26 N. H., 85; 4 Minn., 278; Munger on Pay., 102, *et seq.;* 1 Tudor's Lead. Cas., 1; 1 Am. Lead. Cas., 271; 2 Enc., 463. *Contract reserving title in chattels to seller is a mortgage:* 21 S. C., 212. *Knowledge of attorney of corporation is not notice to bank of which the same person was president:* 33 S. C., 472; 50 S. C., 289. *The D. A. Tompkins Co. cannot invoke the two-fund doctrine as against this appellant:* 19 Ency., 1284; Sub. Div. B. Sheld. on Sub., 100, 102, 94, 98, 67; 2 S. C., 16; 14 Rich. Eq., 132.

*Messrs. Sheppards, Greer & Park,* for Georgia-Carolina Brick Co., contra, cite: *Mechanics' lien extends to all material sold:* Code 1902, sec. 3008; 22 Ency., 348. *As to application of payment by this respondent:* Hopper v. Hopper, 61 S. C.; Bail. Eq., 342; 9 S. C., 344; 12 S. C., 38; 20 S. C., 548; Bail. Eq., 430, 380; 37 S. C., 213; 32 S. C., 277; 27 S. C., 48; 4 Cranch, 317.

*Mr. Ellis G. Graydon,* for D. A. Tompkins Co., contra, cites: *Effect of unrecorded lien:* 21 S. C., 212; 23 S. C.,

24—74

543; Code of 1902, 2456, 2655. *Knowledge of the attorney of the oil mill of the lien is notice to the bank, because the attorney of the oil mill was president of the bank:* 33 S. C,. 472; 50 S. C., 289; 1 Ency., 1148; 65 S. C., 118; 70 S. C., 240, 306.

The opinion herein was filed April 18, 1906, but remittitur held up on petition for rehearing until

May 16, 1906. The opinion of the Court was delivered by

MR. JUSTICE WOODS. This action was brought against Troy Oil Mill Co. and its president and directors, alleging mismanagement and asking the Court to take charge of the property of the corporation and administer it for the benefit of creditors and stockholders. Receivers were appointed and it was referred to the master to take proof of claims and to report upon all issues of law and fact. This report has been confirmed by the Circuit Court, and an order has been made for the sale of the property.

The issues in the appeal are raised by the D. A. Tompkins Co., First National Bank of Greenwood and Georgia-Carolina Brick Co., as to their respective rights as creditors. The Georgia-Carolina Brick Co. sold to the Troy Oil Mill Co. bricks to the value of $2,040, shipped at various dates from July 1st to October 18th, 1904, to be used in the erection of its cotton seed oil mill. All the brick were not, however, used in the construction of the mill, but without notice to the brick company a considerable portion of them were sold by the officers of the oil mill company. On October 13th, 1904, a payment of $1,000 was made without any direction as to the application by the debtor and credited by the creditor on the general account. The brick company filed a mechanic's lien for the balance of $1,040. The Circuit Court held the whole sum to be secured by the mechanic's lien, notwithstanding the objection made

by First National Bank as a creditor that the lien was valid only for the bricks used in the erection of the mill. Our statute gives a lien only "for materials furnished and actually used in the erection, alteration or repair of any building or structure," &c., and there is no reason or authority which would warrant the Court in extending the statute beyond its plain words. On this point the Circuit Court erred.

It was also contended by First National Bank that the credit should be applied to the first items in date on the current account for the bricks, the result of which would be the credit would to a considerable extent extinguish the debt, for the bricks actually used, which is admitted to be secured by the lien, and leave the portion of the debt for the bricks furnished but not used unpaid. This position cannot be sustained. The debtor has the right to direct the application of credits, but if he fails to exercise this right the creditor may make the application at any time before judgment or verdict. *Bell* v. *Bell,* 20 S. C., 34.

When neither debtor nor creditor makes the application, the Court will make it according to its own notions of justice, usually to the unsecured debt or that for which the security is most precarious. *Bell* v. *Bell, supra; Jones* v. *U. S.,* 7 Howard, 690; *Field* v. *Holland,* 6 Cranch, 25.

It is true, that as a general rule credits entered on an account current will be applied to the oldest items first, but this rule is not inflexible, and will not be followed when it would be inequitable to do so. The cases in support of this exception will be found collated in the valuable note, 96 Am. St. Rep., 64.

It would be difficult to imagine a case where it would be more inequitable than in this instance to follow the general rule. The creditor kept a single current account, and made a general credit thereon of a payment received without direction from the debtor as to its application, supposing the bricks furnished by him were all used as supplied in the erection of the oil mill according to the understanding when the contract of sale was made, and that the entire account

would be secure under the provisions of the statute allowing the filing of a lien for materials used. The debtor, however, without notice to the creditor by selling a portion of the bricks divided the items of the account into two distinct classes, one secured by the lien, the other entirely unsecured. In these circumstances equity requires the application of the credit to the items not secured by the lien; especially as the creditor before judgment has signified his election that it should be so applied.

The D. A. Tompkins Co. furnished the machinery for the Troy Oil Mill under a contract which provided it should retain title to the machinery until payment of the purchase money. The date of the contract is May 17th, 1904, but it was not recorded until December 9, 1904. It provided that shipments of power plant machinery were to begin July 1, 1904, and of oil mill machinery July 20, 1904. The only evidence of the actual date of delivery of machinery is the statement of the president of Troy Oil Mill that according to his recollection all the machinery was shipped and on the ground on August 24, 1904, on which date a note for $5,000 was given to First National Bank by the oil mill company, and the proceeds paid on the machinery. The question is whether the contract made with the D. A. Tompkins Co., being a contract in the nature of a mortgage, not recorded within forty days from the time of its execution or delivery, is a valid lien as against the bank claiming to be a subsequent creditor without notice of the terms of the contract.

It was held by the master and the Circuit Judge that the bank could not assail the validity of the mortgage contract for failure to record, because it did not extend credit on the faith of the property therein mentioned. As far as we can discover there is no evidence that credit was not extended on the faith of the machinery; but even if it was not, this could not avail the seller of the machinery. Proof that a subsequent creditor did not even know of the existence of the property covered by an unrecorded mortgage would not

avail the mortgagee, for the reason that the statute makes
no such exception in the protection afforded to subsequent
creditors without notice.    Secret liens ought not to be
favored, and we are not inclined to indulge in any attempts
at refinement in the interpretation of the statute in order to
protect those who from design or negligence fail to record
their papers and then when disaster comes set them · up
against subsequent unsecured creditors.    But the master and
the Circuit Judge further held that actual notice of the
mortgage must be imputed to the bank from the fact that
S. H. McGhee, the president of the bank, was also attorney
of the Troy Oil Mill, and Dr. Neel, the president of the
oil mill company, was a director and a member of the loan
committee of the bank.

Mr. McGhee says that he had no notice of the mortgage
contract, and did not even know from whom the machinery
was bought, when he made the loan, and there is no evidence
to the contrary.    Dr. Neel says: "I don't remember making
any statement about the mill to bank officers when the $5,000
note was given.    When a loan is made to one individually
or when he is in any way interested or connected with the
borrower on the loan board, that one has nothing to do with
passing on that loan.    Another is appointed in his stead.
At the time this loan was made I did not acquaint the bank
with any of the facts with reference to the Tompkins pur-
chase."    This is also uncontradicted.

In general notice to an attorney is notice to his client,
but obviously notice is not imputed to an attorney in all
his personal, professional and official connections from the
fact that one of his clients has notice.    The bank could not
be charged with notice through McGhee, its president, of a
mortgage of another corporation of which McGhee was the
attorney, when McGhee himself had no notice of such mort-
gage.    Neel, the president of the oil mill company, when
procuring a loan for it from the bank, was not acting as a
director of the bank or a member of its loan committee,
but on the contrary his relation and interests were those of

a borrower from the bank, and there is no presumption that he informed the bank of the mortgage. The rule imputing to the principal the agent's knowledge, it is said in *Knobelock* v. *Bank,* 50 S. C., 290, 27 S. E., 962, is placed by majority of courts, including our own, "on the ground that it is the duty of the agent to communicate to his principal all knowledge which he possesses material to the principal's business, and the presumption that he has done that duty. Under the operation of this reason, what are sometimes called exceptions or qualifications to the rule have grown up. For example, an agent is not presumed to have communicated to his principal professional confidences received in representing a third person (*Akers* v. *Rowan,* 33 S. C., 473, 12 S. E., 165), or knowledge acquired while acting for himself or for a third person and not for the principal (same authority), or where the knowledge is such that, according to human nature and experience, the agent is certain to conceal, or where the agent is acting in an adversary relation to the principal, or meditates a fraud against his principal or some third person in his own interest which would be defeated by disclosure." The knowledge of Neel as president of the oil mill company is not, therefore, to be imputed to the bank, though he was one of its directors and a member of its loan committee.

But it is insisted that the D. A. Tompkins Company, at all events, has an equity to require the bank to exhaust the sureties on the note it holds, they being directors of the oil mill company, before assailing the validity of the Tompkins Company's contract as a preferred claim on the machinery. This position is unsound. The true rule is thus stated in 19 Am. & En. Ency., 1264: "The doctrine of marshaling being a rule of equity and having its foundation in principles of natural justice, its application will not be enforced when it would so operate as to work substantial injustice or injury to any party in interest. Thus marshaling will not be applied to the detriment of a third person having an equity equal or superior to that of the

person seeking to invoke the rule." The Tompkins Company has no equity superior to the sureties. It is true these sureties were directors of the oil mill company, but being sureties they were not primarily liable for the debt. There is no evidence that they had any part in keeping the contract off the record, and it would not be equitable to require them to pay a debt to the exemption of the property of the principal for the benefit and protection of a creditor who had lost his preference by his own negligence.

This disposes of all the questions involved in the appeal except the controversy as to the allowance of a fee to the attorney of the Tompkins Company. Its contract contained a clause providing in case of default the mortgage creditor should have a right "to take possession of the machinery and other property named, and sell it by private or public sale, after thirty days advertising, and without process of law, and retain any balance that may be unpaid on all notes, together with interest, traveling expenses, attorney's and other fees connected with collection, and pay purchaser any surplus and collect from purchaser any deficiency."

No fee was claimed or proved before the master, and there was no exception to his report on this point. Upon the hearing of the cause, however, the Circuit Judge ordered "that the master take testimony and report what is a suitable fee for the attorney of the D. A. Tompkins Company's claim, and have same rank." The First National Bank submits the order was improper, because the amount of claim of the Tompkins Company had been fixed by the report of the master, to which there was no exception. The general rule is that a court of equity may within its discretion allow claims to be proved as long as the Court has control of the funds from which it is to be paid. *Nayler* v. *Smith*, 11 Rich. Eq., 259. But when all parties have been heard, a report has been made purporting to cover all claims, and no exceptions have been filed within the time required by law, a creditor who then makes application to have his claim

increased or amended should make some showing of excusable neglect, inadvertence or surprise, and the other parties to the cause whose interests are to be affected should be given full opportunity to be heard as to the propriety of allowing the matter to be reopened, and also as to the merits of the proposed increase or amendment of the claim. The record does not indicate that this showing was made by the Tompkins Company or that other parties in interest were given an opportunty to be heard, and we think the Circuit Judge erred in this particular. The claim for fees may still be brought before the Court in the manner above indicated.

The judgment of this Court is, that the cause be remanded to the Circuit Court for such further proceedings as may be necessary to carry out the views herein expressed.

PER CURIAM. Careful consideration of the petition for rehearing does not disclose any point of law or matter of fact overlooked by the Court in the consideration and decision of this cause. The petition for rehearing is, therefore, dismissed.

The motion to further stay the remittitur in order that the D. A. Tompkins Co. may move the Circuit Court for a new trial, on the ground of after-discovered evidence, must also be denied. It does not clearly appear that the new evidence would affect the result; but aside from that, the affidavit fails to satisfy the Court that the D. A. Tompkins Co. used due diligence to discover this evidence before trial.

The order staying the remittitur is, therefore, revoked.