## REID v. McGOWAN.

1. A person owning 242 acres of land, mortgaged the land as 200 acres, naming the lands of his adjoining neighbors as the boundaries. *Held*, that he was not entitled to claim 42 acres of this tract for a homestead as against this mortgage.
2. A finding of fact by the master, concurred in by the Circuit Judge, approved. Such finding being not without evidence to sustain it, must stand as an established fact in the case.
3. A decree in an equity cause does not acquire its lien as a judgment from the date of the filing but only from the date of its proper entry in the Abstract of Judgments. What is a proper *entry?*
4. Where a father died, leaving one-fourth of his estate in trust for his daughter, E., who brought her action to recover her interest from her brother, the executor, who was in possession of the land of testator, and a decree was rendered that a part of this land be conveyed to E. (which was done), and that the executor pay her $1,000, this decree did not operate as a specific charge upon the lands of testator retained by the executor, nor has the statutory lien in cases of partition, under the act of 1791, any application.

Before Pressley, J., Laurens, June, 1887.

　　In this case, Mr. Justice McGowan did not sit at the hearing of the appeal.

This was an action to foreclose two mortgages, commenced January 15, 1886. The first mortgage described the land as "the McGowan tract, containing 200 acres, and bounded by lands of Hollingsworth, Miller, Austin, and others." In the second mortgage the land was described as "the home place, containing about 200 acres, bounded by lands of Reid, Golding, Hollingsworth, and Miller." Defendant claimed that he intended to reserve 42 acres for his homestead, and to mortgage 200 acres of the 242 in the tract. Other matters are sufficiently stated in the opinion.

The Circuit decree was as follows:

This case seeks foreclosure of two mortgages to plaintiff by John T. McGowan. He claims that forty-two acres of his tract of land, containing his homestead, was not included in said mortgages. The special master finds that they were included, and I concur in that.

The remaining questions are as to priority of liens. Plaintiff's first mortgage was duly executed on January 28, 1881, and his second mortgage was executed in December of same year. On June 21, 1882, the Atlantic & Virginia Fertilizing Company duly entered judgment against said McGowan for $85.34, including costs. On November 5, 1880, Elizabeth Strain and her husband obtained a decree in this court for $1,000 against J. T. McGowan. It was filed by the clerk of the court on that day, but was not entered according to law until some time in February, 1885. Her attorney contends that it was a final judgment and valid lien from the date it was filed. My judgment is, that it was a final judgment, and would so rank in the distribution of the estate of a deceased person from the date it was filed, but in this contest between liens it was not a valid lien on real estate until the date at which it was "entered" according to our statute.

On the 5th of March, 1885, C. D. Barksdale, survivor, entered judgment against John T. McGowan for $109, including costs of the case. My judgment is in conformity with the report of the special master. The said mortgages are the first liens; the judgment of the Fertilizing Company is the second; Elizabeth Strain's is third, and that of C. D. Barksdale is fourth.

It is ordered and adjudged, that the mortgaged property set forth in the complaint be sold, &c.

Mr. *C. J. Hunt*, for J. T. McGowan.

Mr. *F. P. McGowan*, for Mrs. Strain.

Mr. *R. C. Watts*, for plaintiff.

February 15, 1888.   The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.   The action below was brought to foreclose two mortgages executed by the appellant, McGowan, to the plaintiff, respondent, and covering the same tract of land described in the first mortgage as the McGowan tract, containing 200 acres, with certain boundaries; and in the second as the home place, containing 200 acres, more or less, with nearly same boundaries as the first—the first intended to secure a bond of $1,000, and the second a bond of $359.20; the first being dated January 28, 1881, and the second December 15, 1881.

The defendant, McGowan, answered, claiming a homestead in 42 acres of the tract, which was in excess of the two hundred. acres mortgaged, and which he claimed was not embraced in the mortgages, but was left out as his homestead.   He also alleged that the land formerly belonged to his father, William McGowan, deceased, in whose will one-fourth interest in said land was devised to his daughter, Elizabeth, now Mrs. Strain, the defendant, McGowan, being the executor of the will and trustee of the said Elizabeth, and that no partition had been made among the devisees, four in number, including the said defendant, each being entitled to one-fourth interest; that in 1880 the said Elizabeth obtained a decree against said defendant, ordering him to convey. to her her portion of said land, and to pay to her by a certain day the sum of $1,000, and upon so doing to be discharged of his trust; which order and decree had never been complied with, of which facts the plaintiff had notice when the mortgages were executed.   Wherefore he prayed that all encumbrancers be called in, and that Elizabeth Strain's claim be declared to be the first lien upon the land, and that the said 42 acres be, adjudged to defendant as his homestead.

Mrs. Strain came in, setting up the decree mentioned for $1,000, said decree being dated                   , 1880. And also two judgment creditors came in, to wit, the Atlantic & Virginia Fertilizing Company, with a judgment for $65.15, obtained June 13, 1882, and costs, $20; and C. D. Barksdale, with judgment for $79.60, and costs, $29.40, obtained February 26, 1885.

The case was referred to a special master to hear the issues of law and fact, and to report his findings of fact and conclusions of law, with leave to report any special matter. His findings of fact and conclusions of law were presented to the court in an elaborate report (found in the "Case"), in which he held that the Strain decree had not acquired a lien because of defective entry; that the plaintiff had no notice of said decree; that the defendant, John T. McGowan, was not entitled to the homestead claimed; that the mortgages should be foreclosed, and that the proceeds should be applied, 1st, to said mortgages; 2nd, to the Virginia Fertilizing Company judgment; 3rd, to the Strain decree; and, 4th, to the Barksdale judgment.

This report, upon exceptions, was confirmed by his honor, Judge Pressley, who, holding with the master that the 42 acres were included in the mortgage, denied the homestead, and held that although the Strain decree was a final judgment, and might take rank in the distribution of assets of a deceased from the date of filing, yet that it could not have lien on real estate until the date at which it was "entered" according to the statute. He held, therefore, that it was postponed to the other judgment liens, and he ordered the land to be sold, the proceeds to be applied to plaintiff's mortgages, then to the Virginia Fertilizing Company's judgment, then to the Strain decree, and, lastly, to the Barksdale judgment, according to the findings of the master, as to the date of "entry" of these different liens.

The defendants, McGowan and Mrs. Strain, contest this decree—the first on the ground that his homestead was denied him, and the second because the decree in her favor was held invalid as to its lien on the land on account of the alleged defects in its "entry"; also, because his honor should have held that the plaintiff had notice of said decree before the execution of the mortgages; and further, that the land in question was subject to the

trust of Mrs. Strain under her father's will, and bound, therefore, for the payment of the said decree; also, that it was bound, as in cases of partition.

We see no reason to disturb the finding of the master, concurred in by the Circuit Judge, as to the 42 acres claimed by defendant, McGowan, as a homestead. This portion of the land was within the boundaries described in both mortgages, and there was no distinct reservation in either. We think the mortgages included the entire tract—certainly the second one did—and a homestead cannot now be carved out as against the liens imposed by said mortgages. The execution of a mortgage excludes the homestead, so far, at least, as the debt intended to be secured is concerned.

Neither can we overrule the finding below as to absence of notice on the part of the plaintiff of the Strain decree. This finding is not without evidence to sustain it, and under the rule in such cases it must stand as one of the established facts in the case.

One of the important questions in the appeal is whether the "entry" of the Strain decree was so defective as to prevent its lien on the land in priority to the mortgages of plaintiff and the judgment of the Virginia Fertilizing Company, as held by the Circuit Judge. The facts, as found, are that the decree was a decree in equity, obtained on November 5, 1880, in an action against John T. McGowan, as executor of William McGowan, deceased, and as trustee of Elizabeth Strain, to enforce her rights under the will of said William McGowan, her father, and to set aside the trust as executed. This decree was filed by the clerk on November 5, 1880. It was, however, not entered, enrolled, nor indexed at that time, but was thrown in a desk in the clerk's office, where it was found by G. W. Shell, successor, in April, 1884, who, about February, 1885, enrolled, indexed, and entered it; that the book of Abstract of Judgments shows only the date of the filing of the summons and complaint, and gives no information as to the date of entry, the date of the judgment or relief, but simply shows the date of the filing of the summons and complaint and the parties to the action.

It is hardly necessary to say that this was not sufficient to give a judgment lien on real estate under the statutes upon that subject. Section 313 of the Code (now section 310), of force when

this decree was pronounced, read: "Final judgments hereafter *entered* in any court of record in this State shall constitute a lien on real estate. * * * " What is entry? "The clerk shall keep among the records of the court a book for the entry of judgments, to be called the judgment book." Sec. 300. "The judgment shall be entered in the judgment book, and shall specify clearly the relief granted, or other determination of the action." In substance now section 301. "The lien is only created by the entry." *DeSaussure* v. *Zeigler*, 6 *S. C.*, 13. Here nothing seems to have been done before 1885, except to mark the decree filed, when it was pronounced in November, 1880, it being at the same time deposited in a desk in the clerk's office, where it was found by the successor of the then clerk in 1884. As we have said, if the decree is to be regarded as a judgment, which is defined to be the final determination of the rights of parties, and is to be governed by the law of force since the adoption of the code on the subject of final judgments and their liens, then there is no room for doubt or hesitation as to the correctness of the judgment below on this point.

It is urged, however, by appellant that the decree being a decree in chancery, a different rule is applicable, to wit, the law of force as to decrees before the code. And it is contended that under that law lien had attached from the filing. It is true, that before the consolidation of the courts, and the abolition of the old Court of Equity with its attendant office of commissioner, the binding efficacy and the enforcement of decrees in chancery were governed by a different rule from that which governed in judgments at law. Originally, decrees in chancery had no lien on lands, and could be enforced only by attachment, but in 1785 an act was passed giving power to issue execution on money decrees in addition to the remedy previously existing by attachment, the consequence of which was to create a lien by such decrees, as was decided in *Blake* v. *Heyward* (*Bail. Eq.*, 212), in which the court said: "The grant, therefore, of the common law process of *fieri facias* to enforce decrees in equity against both the real and personal estate of the party, gave to such decrees, as a necessary incident, the lien of a judgment at law." And in the act of 1840 a mode was provided for the entry of such decrees by the commis-

sioner in equity in his office, no doubt with the view of giving notice to the world.

But is this the law which applies to decrees now? We think not. It is, therefore, needless to pursue this subject further. A decree in chancery is a judgment to all intents and purposes, and is now governed by the requirements of the code and acts on the subject of judgments as fully as a judgment at law. The Court of Equity has been abolished, the office of commissioner has been abolished, all forms of actions heretofore existing have been abolished, and a single one substituted in their stead, and the final adjudication of the rights of parties litigant is the judgment of the court, whether it be in a case at law or one involving an equity cause, and the rules enacted and established for the enforcement and liens of judgments apply to all.

It is urged next, in behalf of Mrs. Strain, that the decree in question was obtained by her in an action brought against John T. McGowan, as executor of her father's will and as her trustee under said will, and that it involves the settlement of her interest under said will; and, therefore, the real estate involved, which was a part of the estate of her father, should be made liable for said decree in preference to the claims of creditors of the said John T. McGowan. It is true, that under the will of William McGowan, the father of Elizabeth, she was entitled to one fourth interest of the personal and real estate after the death of her mother, and no doubt her action, which resulted in the said decree, was instituted to obtain said interest. As to the real estate, the decree, which it seems was a consent decree, directed a conveyance to Elizabeth of one hundred and ninety-eight acres of the land of which William McGowan died seized and possessed, leaving some two hundred acres, more or less, the land mortgaged, in the possession of the executor, John T. McGowan. And it also directed the payment to Elizabeth of $1,000, no doubt her portion of the personalty. The conveyance of the real estate has been made, but the $1,000 has never been paid, and it is that which is the basis of the claim here.

Now, the will of William McGowan did not subject his estate, either in whole or in part, to the payment of Mrs. Strain's share. He had four children, to each of whom he bequeathed one-fourth

interest, putting the share of his daughter, Elizabeth, now Mrs. Strain, in trust. Had the entire estate of her father been in the hands of the executor at the time of her action, no doubt her share could have been set apart and delivered to her free from the debts of the executor, but doubtless the personal estate of William McGowan had been wasted, and Mrs. Strain had no alternative but to take a money decree against the executor, to be enforced like any other judgment against him, out of such property as she could find. We do not see how the act of 1791, giving a lien in certain cases of partition, can be made to apply. We do not understand that this case has any feature of partition.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE McIVER concurred.