9781

FARMERS & MERCHANTS BANK v. HOLLIDAY *ET AL.*

(93 S. E. 333.)

1. MORTGAGES—FORECLOSURE—ATTORNEY'S FEES.—That a foreclosure was consented to does not show that allowance of $500 as plaintiff's attorney's fees is erroneous.

2. JUDGMENT—LIENS—PRIORITIES BETWEEN JUDGMENTS.—Code Civ. Proc. 1912, sec. 348, subdiv. 1, providing that verdicts and orders of Court on money demand shall be liens on all real estate of judgment debtor in the county, provided none rendered at same term shall have priority over each other, does not affect the priorities of transcripts of judgments filed in another county.

3. JUDGMENT — LIENS — RECORDING AND DOCKETING. — Under Code Civ. Proc. 1912, sec. 348, subdiv. 1, construed in connection with sections 339-341, judgment does not become lien on real estate of judgment debtor in county other than that where judgment was rendered by mere filing of transcript of judgment with clerk of Court of that county, but only on being entered on abstract of judgments.

4. MORTGAGES — FORECLOSURE BY ACTION — RIGHT TO SURPLUS. — Upon foreclosure of a mortgage on lands situated in two counties, where there were judgments in both counties, none of which had priority over others, mortgage must be paid out of the two funds realized from the sale of the lands in both counties, each fund contributing ratably its proportion of the mortgage debt, leaving the surplus from the lands in each county to be applied to the judgment liens thereon.

5. LIENS—PRIORITIES.—In the administration of legal liens, equity follows the law and gives them rank according to their legal priorities.

6. MARSHALING ASSETS AND SECURITIES—RIGHTS OF THIRD PERSONS—TWO FUND DOCTRINE.—The two fund doctrine rests upon equitable principles, and it will not be allowed to defeat the equities of third persons over whom the parties invoking it have no superior equity.

Before SEASE, J., Marion, June, 1916.    Affirmed.

Action by the Farmers & Merchants Bank against J. G. Holliday and others. From a judgment, the Peoples Bank appeals.

*Messrs. Willcox & Willcox* and *S. M. Wetmore,* for the Peoples Bank, appellant, cite: *As to filing transcript of*

FOOTNOTE.—As to what entry or record of judgment is necessary to complete lien, see 28 L. R. A. 621 to 640.

*judgment:* Code Civ. Proc., secs. 341, 348; 3 Words & Phrases 2764-5; 14 S. C. 35; 46 S. C. 292; 50 S. C. 380; 33 S. C. 611.   *Clerk's office hours:* Civil Code, secs. 1305, 1307.   *Two fund doctrine:* 18 S. C. 425.

*Mr. M. C. Woods,* for American National Bank, appellant.

*Mr. W. F. Stackhouse,* for respondent, cites: *As to entry of judgment:* Code Civ. Proc., sec. 339; 45 S. C. 11; 10 S. C. 278; 89 S. C. 454.

July 24, 1917.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The appellant thus states its case:

"An action was brought to foreclose a real estate mortgage of lands situate in Marion and Dillon counties.   Certain creditors of the mortgagor were made parties, including appellant and respondents herein.   The appellant and certain of its codefendants obtained judgment against the mortgagor in Marion county, on June 2, 1913, and, so far as the Marion county property is concerned, no priority is claimed by appellant, for all of the judgments involved herein were docketed on the same date in Marion county, but on the same date, June 2, 1913, the appellant herein obtained a transcript of its judgment in Marion county and filed the same for record in Dillon county with the deputy clerk of Court, who marked the same 'filed' at about 9 o'clock p. m. of said day, but it was not entered on the abstract of judgments nor indexed until the following day, June 3, 1913.   The other parties interested herein had transcripts of their judgments in Marion county filed, docketed, and indexed in Dillon county on June 3, 1913.   The

master held that appellant was not entitled to priority by reason of the fact that its transcript of judgment was filed in Dillon county the day before the other transcripts were filed there. The mortgage debt was paid out of the proceeds of the sale of the mortgaged premises. The master in his report divided the surplus left, after having paid the mortgage debt, into two parts, allowing appellant and the other judgment creditors who had filed transcripts of judgments also in Dillon county to participate equally in such surplus in Dillon county, and all of the judgment creditors in Marion county to participate in the surplus derived from sale of property there, after payment of the mortgage. The Circuit Court affirmed the master's report, and now the appeal to this Court upon exceptions taken."

1. The first exception complains of error in allowing plaintiff's attorney a fee of $500. The record does not show that this was error. The mere fact that the judgment of foreclosure was consented to does not show it. Sometimes much work and considerable skill is required to secure a consent decree.

This exception is overruled.

2. The appellant states his second question as follows:

"His Honor erred, it is respectfully submitted, in affirming the report of the Judge of probate as to the method of distribution of the surplus in his hands among plaintiff and defendants. He should have held: '(a) That the filing of the transcript of the judgment of the Peoples Bank against J. G. Holliday in the office of the clerk of Court for Dillon county on the evening of June 2, 1913, and the entry thereof on the judgment book as of June 2, 1913, on June 3, 1913, created a lien on the Dillon property in favor of the Peoples Bank superior to the lien of the judgments of other creditors who filed their transcripts and had same entered in the office of the clerk of Court on June 3, 1913.' "

There are two sections of the Code of Civil Procedure that are involved in this case. Section 341, that the tran-

script when so docketed "shall have the same force and effect as a judgment of that Court." Section 348 provides that the transcript, "when so filed, shall constitute a lien on the real property of the judgment debtor in that county."

Appellant claims that, while the general effect dates from filing, yet the specific effect, to wit, the creation of a lien on land, dates from the filing. Appellant claims that the statute is clear, and whatever the Court may think of the justice of allowing its judgment filed on the 2d of June to take precedence, and the whole surplus of the Dillon real estate, still the law is plain, and the only way to escape it is by judicial legislation. The appellant stands on the letter of the statute, and by that letter its priority is slain. The last clause of subdivision 1 of section 348 is:

*"Provided, further,* That all such verdicts and orders rendered and issued at the same term of Court shall have no priority one over another, notwithstanding they may be rendered and issued on different days of said Court."

The judgments were obtained in Marion county on the 2d of June. The transcripts were issued on the 2d of June. One was sent by hand, and the messenger called the deputy clerk to the office after hours to have it filed. The other was sent by mail and was filed on the 3d of June. Both were docketed on the 3d of June, but the one had no priority over the other by the letter of the statute.

This exception is overruled.

3. The third question is:

"(b) That the Judge of probate erred in finding and reporting that there should be a division of the surplus into two funds, one from the Dillon property and one from the Marion property, and in reporting that the fund applicable to each county should be applied towards the discharge of the judgments docketed in that county. It is respectfully submitted that the report of the Judge of probate should have been overruled in this particular, and that the Circuit

Judge should have held that the holders of the judgments docketed in Dillon county had, as to the Marion county property, rights equal in all respects to those of the holders of the judgments not docketed in Dillon county, and that they had, as to the Dillon property, higher rights than were held by the holders of the judgments which were not docketed in Dillon county, and that this higher right conferred upon them the privilege of insisting that the mortgage debt be paid as far as possible from the proceeds of sale of the Marion property, thereby leaving the proceeds of the sale of the Dillon property to be applied towards the discharge of the judgment constituting the next succeeding lien thereon."

There were two funds, and the liens on the two were not the same. There was no other way but to divide the money into two funds and apply the two fund doctrine. This would not prevent those who hold judgments in Dillon and Marion from prorating for the balance in Marion county.

The exceptions are overruled, and the judment affirmed.

MR. CHIEF JUSTICE GARY concurs in the result.

MR. JUSTICE HYDRICK, *concurring.* I concur in affirming the judgment, but I do not concur in the reasons for overruling the second and third grounds of appeal. Subdivision 1 of section 348 of the Code of Procedure reads:

"Final judgments entered in any Court of record in this State, subsequent to the 25th day of November, A. D. 1873, shall constitute a lien upon the real estate of the judgment debtor in the county where the same is entered for a period of ten years from the date thereof; and a transcript of such judgment may be filed in the office of the clerk of the Court of Common Pleas of any other county, and, when so filed, shall constitute a lien on the real property of the judgment debtor in that county from the date of the filing thereof, with the same force and effect as the original judgment, for the period of ten years from the entry of said original judg-

ment: *Provided,* That the verdict of a jury, where rendered for an amount of money, and the order of the Court, in a cause tried or determined by the Court, upon a money demand, shall be a lien upon all the real estate of the person against whom the same is rendered, from the rendition of such verdict or order until the expiration of the five days from the rising of the Court at which the same was rendered: *Provided, further,* That all such verdicts and orders rendered and issued at the same term of Court shall have no priority one over another, notwithstanding they may be rendered and issued on different days of said Court."

The last proviso, that verdicts and orders of the same term shall have no priority one over another, is not relevant to the present issue. It was not intended to affect the priorities of transcripts filed in another county, but only the liens given by the proviso immediately preceding it to verdicts and orders obtained during the term from their date until the expiration of five days after the term, when the final judgments thereon could be entered. These provisos were added to the section by the act of 1909, 26 Stat. 39. Prior to that time, a verdict, or an order for judgment, did not constitute a lien upon the real estate of the judgment debtor, until the judgment was entered thereon; and, under rule 3 of the Circuit Court, the clerk is forbidden to enter any judgment, without special leave of the Court, until the expiration of five days after the Court has adjourned for the term. The purpose of the rule was to allow all judgments obtained at the same term to have equal rank, provided, of course, they were entered on the same day; and these provisos were so framed as to carry out that intention. But prior to that time the Court had, and still has, power in its discretion to grant special leave to the clerk to enter judgments on verdicts and orders obtained during the term, before the final adjournment thereof. That was done in this instance, and a number of judgments were entered against the defendant, Holliday, on the same day; and, of

course, they all took equal rank as liens upon his real estate in Marion county.

We must, therefore, treat the question at issue just as if all these judgments had been entered on the same day after the Court had adjourned for the term. That being so, we are brought to the question whether the mere filing of a transcript of judgment with the clerk of Court of another county than that in which the original judgment was entered constituted a lien upon the real estate of the judgment debtor therein before it was entered upon the "Abstract of Judgments;" and that question must be answered in the negative. No doubt, there is a technical difference between the "filing" and the "docketing" of transcripts; and section 348 says that, "when so filed," the transcript shall constitute a lien, etc. But the language of that section must be read and interpreted in connection with sections 339, 340 and 341, in the light of the history of the legislation upon the subject, and the decisions of this Court construing that legislation to ascertain the legislative intent. This Court has uniformly held that the mere filing of a judgment roll, decree, or transcript thereof with the clerk constitutes no lien, until it is entered upon the book called the "Abstract of Judgments," which the clerk is required by section 339 to keep, and upon which he is required by section 340 to enter every judgment. *Harrison v. Mfg. Co.*, 10 S. C. 278; *Reid v. McGowan*, 28 S. C. 74, 5 S. E. 215; *Mason v. Music Co.*, 45 S. C. 11, 22 S. E. 755. While it is true, as held in the case last cited, that a judgment is not the less a judgment, in the sense that it is a filed determination of the rights of the parties, and, perhaps, for other purposes before it is so entered; nevertheless, the cases cited hold that the administrative act of entry is required to give it force and effect as a lien upon the real estate of the judgment debtor in the county, and entitles the judgment creditor to enforce it by execution. It follows that the transcript of the judgment of the Peoples Bank filed with the

clerk in Dillion county on June 2d did not become a lien until it was entered on June 3, 1913, and it ranks equally with the transcript of the judgment in favor of the Farmers & Merchants Bank which was entered the same day.

Upon the next proposition, which involves the adjustment of the priorities of the various liens, we must keep in mind the fact that a judgment is a lien only upon the land of the judgment debtor situated in the county in which such judgment has been entered, and not upon his lands in any other county; and for that reason, a judgment creditor is allowed by statute to file and docket a transcript of his original judgment in any other county in which his debtor may own real estate, in order that he may acquire a lien upon it; also, that, in respect of legal liens, priority in time ordinarily secures priority in right. As the judgments entered in Marion county, on June 2d, were not liens upon the lands in Dillon county, they had no priority over those entered in Dillon county on June 3d, even though they were prior in date. Therefore, the judgment creditors who filed their transcripts in Dillon county have priority of right to the surplus fund left from the sale of the Dillon county lands; and, as their original judgments are of equal rank with those of the other judgment creditors in Marion county, they are entitled, after the application of that surplus to their judgments, to share ratably with the other judgment creditors in the surplus fund realized from the Marion county lands.

Under the equitable two fund doctrine, if there had been no judgments in Dillon county, the mortgagee could have been required to exhaust those lands in satisfaction of his mortgage to the exoneration of the Marion county lands in favor of the Marion county judgment creditors; *e converso,* as to the Marion county lands in favor of Dillion county judgments, if there had been no judgments in Marion county. But, as there were judgments in both counties, and as the Marion county judgments had no priority over the Dillon county judgments in respect

of the lands in Dillon county, and as the Dillon county judgments had no priority over the Marion county judgments in respect of the lands in Marion county, neither had the right to have the equitable two fund doctrine applied so as to disturb the legal liens acquired by the others in the respective counties. In the administration of legal liens, equity follows the law, and gives them rank according to their legal priorities. 1 Story's Eq., sec. 553. Therefore, the Court properly held that the mortgage must be paid out of the two funds realized from the sale of the lands in both counties, each fund contributing ratably its proportion of the mortgage debt, leaving the surplus from the lands in each county to be applied to the judgment liens thereon, according to their priorities.

The two fund doctrine rests upon equitable principles, and, therefore, it will not be allowed to defeat the equities of third persons over whom the parties invoking it have no superior equities. *Wardlaw v. Oil Mill,* 74 S. C. 368, 54 S. E. 658, 114 Am. St. Rep. 1004. In applying the rule, the maxim, *"Qui prior est in tempore potior est in jure,"* has peculiar force.

MESSRS. JUSTICES WATTS and GAGE concur in the opinion delivered by MR. JUSTICE HYDRICK.